RECEIVED
IN ALEXANDRIA, LA.

OCT 19 2009

TONY R. MOORE, CLERK
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# ALEXANDRIA DIVISION

| UNITED STATES OF AMERICA | CRIMINAL NO. 1:08-cr-00206 |
|---|---|
| -vs- | JUDGE DELL |
| DANIEL OWENS | MAGISTRATE JUDGE KIRK |

## R U L I N G

### I.   Background

The defendant, Mr. Daniel Owens ("Mr. Owens") is currently incarcerated at the United States Penitentiary in Pollock, Louisiana ("USP Pollock").  Mr. Owens was convicted of aiding and abetting an attempted manufacture methamphetamine, and his sentence for that offense is scheduled to expire on December 8, 2009.

Mr. Owens is charged in a one-count indictment with violating 18 U.S.C. § 1791(a)(2) for possessing contraband in prison.  This prosecution arises out of events that took place on May 26, 2008.  On that day, guards at USP Pollock allegedly witnessed Mr. Owens placing bloody clothes inside a trash bag.  USP Pollock Correctional Officers ("guards") conducted a pat down search of Mr. Owens, and discovered three objects: two metal blades, or "shanks," and a belt with a pad lock attached to the end of it.  Because all three items could be used as makeshift weapons, each was considered contraband.

On March 19, 2009, Mr. Owens filed the instant motion, which contains a variety of separate motions (Doc. 32).  Specifically, Mr. Owens's claims are as follows:

(1)    Motion *in Limine* to Exclude Rule 404(b) Evidence, and a Request for a Hearing on the Motion;

(2)    Motion to Suppress Evidence;

(3)    Motion to Examine Files for Evidence of Bias and Wrongdoing;

(4)    Motion to Dismiss Indictment Due to Selective Prosecution;

(5)    Motion for Bill of Particulars; and

(6)    Motion to Review Grand Jury Concurrence Form.

The government responded to Mr. Owens's motions on September 29, 2009 (Doc. 55). With the arguments of both parties submitted, the Court is now prepared to rule on each of the defendant's pending motions.[1]

## II.    <u>Law and Analysis</u>

Mr. Owens was at one time represented by counsel, but on March 3, 2009, his first attorney withdrew from the case. (Doc. 31). On April 2, 2009, another attorney enrolled as counsel for Mr. Owens (Doc. 36), but that attorney has since withdrawn as well (Doc. 53). The defendant is at this point a *pro se* litigant, and was proceeding *pro se* when the instant motions were filed on March 19, 2009. (Doc. 32). Therefore, in accordance with settled precedent, the Court will hold Mr. Owens's filings to a less exacting standard than the filings of an attorney, and will construe Mr. Owens's arguments liberally. <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>Parker v. Fort Worth Police Dept.</u>, 980 F.2d 1023, 1026 (5th Cir. 1993).

---

[1] Although each of the defendant's claims could be considered a separate motion, because they were filed together in one document, and for the sake of efficiency, this single ruling will address all of the motions at once. A separate order detailing the Court's disposition of each motion will follow.

A.     **The Motion *in Limine* to Exclude Rule 404(b) Evidence, and Request for a Hearing on the Motion.**

The defendant first requests the exclusion of evidence which he contends is inadmissible "prior bad act" evidence under Rule 404(b).  Mr. Owens claims that certain videos supposedly depicting him carrying weapons may be introduced during the government's case.  (Doc. 32, pp. 2-3).  However, the government in its opposition stated clearly that it "does no intend to present videographic evidence."  (Doc. 55, p. 2).  Thus, we find that Mr. Owens's motion is moot insofar as it relates to videographic evidence.  To that extent, the defendant's motion is **DENIED**.[2]

B.     **Motion to Suppress Evidence**

Mr. Owens's motion next includes the following request: "In addition, competent motions to suppress should (must) be filed specifically for the reasons explained above."  (Doc. 32, p. 3).  The only substantive explanations that appear above this request in Mr. Owens's motion relate to the videographic evidence referred to previously.  Assuming that this motion applies to the same videos referenced by the defendant in his discussion of Rule 404(b), the motion must be denied as moot, because (as explained above) the government will not offer any such evidence at trial.  Nonetheless, we will briefly consider Mr. Owens's motion at its broadest possible construction; that is, assuming that Mr. Owens is seeking to suppress the evidence recovered from his person at the time of the search on May 26,

---

[2] The Court notes that this ruling does not pertain to the Rule 404(b) evidence prefaced by the government's notice filed on December 2, 2008 (Doc. 22).

2008.  Even affording Mr. Owens's motion this liberal construction, the Court finds that no relief is warranted.

Typically, in a motion to suppress, the defendant bears the burden of proving by a preponderance of the evidence that the search was conducted illegally.  See United States v. Waldrop, 404 F.3d 365, 368 (5th Cir. 2005).  But when the search is conducted without a warrant, the burden shifts to the government to establish that the search was, in fact, legal.  See id.; United States v. Guerrero-Barajas, 240 F.3d 428, 432 (5th Cir. 2001).  However, Mr. Owens's status as a prisoner alters our analysis significantly.  For instance, regarding a search of an inmate's cell, "as a per se rule a prisoner cannot invoke the Fourth Amendment because society is not prepared to recognize a prisoner's expectation of privacy in his prison cell."  United States v. Ward, 561 F.3d 414, 419 (5th Cir. 2009) (citing Hudson v. Palmer, 468 U.S. 517 (1984)). As to searches of an inmate's person, the Fifth Circuit has provided the following guidance:

> A prisoner's rights are diminished by the needs and exigencies of the institution in which he is incarcerated. He thus loses those rights that are necessarily sacrificed to legitimate penological needs. However, we have recognized that the Fourth Amendment protects prisoners from searches and seizures that go beyond legitimate penological interests. Searches of prisoners must be conducted in a manner that is reasonable under the facts and circumstances in which they are performed. The test for a Fourth Amendment violation requires the balancing of the need for the particular search and the invasion of rights that are a result of the search.

4

Hutchins v. McDaniels, 512 F.3d 193, 196 (5th Cir. 2007) (internal citations and quotations omitted).[3]

    In this case, the Court finds that there is no real question as to whether the search of Mr. Owens was reasonable when balanced against the legitimate needs of prison officials and the need for safety internal to the prison.  While the search was conducted without a warrant, it was also conducted after USP Pollock officials observed Mr. Owens stowing bloody clothes in a trash bag.  This simple act, particularly when considered in context, provided the guards with legitimate justification to search Mr. Owens.  The search itself was limited to a brief pat-down of Mr. Owens's clothing.  No further invasive steps were taken in discovering the evidence, and Mr. Owens himself raises no other issues concerning a violation of his limited privacy rights.[4]  By contrast, the USP Pollock guards had obvious and pressing justification to conduct the search, supported by the "legitimate penological needs" of investigating a possible offense within the prison, curbing inmate violence, and removing contraband from circulation among the inmate population.  Given Mr. Owens's limited privacy rights as a prisoner, these important considerations are decisive in our analysis.

---

[3]  Clearly, then, a prisoner's diminished expectation of privacy substantially impacts the balancing test that a court must conduct; as an example, "strip searches of prisoners are not *per se* unconstitutional; rather, such searches may be conducted by prison officials even absent probable cause so long as the searches are conducted in a reasonable manner."  Tyson v. Tanner, No. 08-4599, 2009 WL 2883056, at *3 (E.D. La. Aug. 25, 2009) (citing Bell v. Wolfish, 441 U.S. 520, 558-60 (1979)).

[4]  In truth, Mr. Owens makes no apparent argument that his rights were somehow violated during the search of his person.

Because this balancing test weighs overwhelmingly in favor of the legitimacy of the search, Mr. Owens's motion to suppress is **DENIED**.

### C.    Motion to Examine Evidence

The defendant next demands to review the "files" of a Lieutenant Tony Garrow at USP Pollock, and another staff member, Mr. Melton.  Mr. Owens claims that both individuals have been demoted and reprimanded for various types of malfeasance in the past, and that both were involved in the investigation of his case.  The government responds that neither individual is the case agent in this matter, and that whatever information that Mr. Owens seeks regarding them is not subject to discovery at this point.

Under Federal Rule of Criminal Procedure 16(a)(1)(E),

Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
(I) the item is material to preparing the defense;
(ii) the government intends to use the item in its case-in-chief at trial; or
(iii) the item was obtained from or belongs to the defendant.

Judging from the terms of the instant motion, the information sought by the defendant does not satisfy any of the criteria specified by this rule.  What the defendant seeks specifically are records pertaining to the two USP Pollock staff members' service records, which purportedly might contain evidence that they had both committed acts of malfeasance in their capacity as investigators.  Affording this argument the broadest reasonable interpretation, Mr. Owens thus contends, in effect,

6

that the evidence gathered against him in this case is subject to scrutiny, because the officers who collected the evidence had questionable professional records, and have been accused of tampering with or falsifying evidence in prior investigations. Thus, the evidence would be material to Mr. Owens's defense.

This argument is without merit. To begin with, neither of the USP Pollock staff members identified by Mr. Owens appear on the government's witness list. (Doc. 23). Thus, the evidence would not be useful for purposes of cross examination. Also, the Court has before it no proof that any evidence in the case was gathered by the two staff members. Even if it had been, however, we fail to see how any files related to the service records of either individual would be material to Mr. Owens's defense.[5] As the government points out, neither of the individuals named by Mr. Owens is the case agent on this particular matter. Finally, further disclosure of the personnel records under these circumstances would likely violate the two staff members' privacy rights.[6]

---

[5] We reject the government's argument, however, that Mr. Owens's request is precluded by Fed. R. Crim. P. 16(a)(2), which prohibits "discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Mr. Owens is requesting the service records of these individuals, not any work product compiled by them or the prosecution in general. For the same reason, we reject the government's argument that this material would be covered by 18 U.S.C. § 3500, because the defendant is not seeking statements made by the staff members, but rather their "files," or work records.

[6] Under the Freedom of Information Act, disclosure of government records is prohibited as to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Given the seeming lack of relevance of the records requested by Mr. Owens, there is a substantial possibility that such an invasion of privacy would result from disclosure in this case. See id.; see also Snyder v. United States, No. Civ.A. 02-0976, 2003 WL 21088123, at *2-3 (E.D. La. May 12, 2003) (denying a request for production of a postal employee's personnel file in a personal injury lawsuit, because the information contained in the file, including past instances of misconduct, was not relevant to the lawsuit).

Therefore, the defendant's request for production of the "files" of the two named USP Pollock staff members is hereby **DENIED**.

### D.    Motion to Dismiss Indictment Due to Selective Prosecution

Mr. Owens contends that the indictment should be dismissed because of the "government's selective prosecution tactics that it regularly employs." (Doc. 32, p. 4). He does not, however, offer any further explanation of what types of tactics he is referring to, nor how he has been prejudiced by them.

"A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." United States v. Armstrong, 517 U.S. 456, 463 (1996). Prosecutors have considerable discretion in deciding whether to bring charges against a defendant when there is probable cause to believe that the defendant committed an offense, and there is a strong presumption that their decision to prosecute was made fairly and impartially. Id. at 464-65. In order to state a successful claim of selective prosecution, a defendant "must demonstrate [both] that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" Id. at 465 (quoting Wayte v. United States, 470 U.S. 598, 608 (1985)); accord United States v. Hall, 455 F.3d 508, 523 (5th Cir. 2006). A showing under the first element can be made by offering evidence that, while the defendant has been selectively charged and prosecuted for a particular offense, other similarly situated individuals were not. See, e.g., United States v. Jones, 287 F.3d 325, 332-33 (5th Cir. 2002). To satisfy the second element, the

8

defendant must establish that "the discriminatory selection of him for prosecution is invidious or in bad faith, in that it rests on such impermissible considerations as race, religion, or the desire to prevent his exercise of his constitutional rights."  United States v. Webster, 162 F.3d 308, 334 (5th Cir. 1998).

Mr. Owens has offered the court neither evidence nor argument concerning either element of a selective prosecution claim.  In his motion, Mr. Owens did not claim that any particular (similarly situated) individual or group was not prosecuted, or identify a potentially invidious ground upon which he was selected for prosecution.  Even if he had, he has put forth absolutely no evidence, statistical, documentary, or otherwise, to substantiate his contention.  Mr. Owens's unsupported assertions of selective prosecution are insufficient to warrant relief, or an evidentiary hearing on the matter.[7]

Therefore, the defendant's motion to dismiss the indictment for selective prosecution is hereby **DENIED.**

### E.   **Motion for Bill of Particulars**

Mr. Owens also requests a bill of particulars "because the indictment is vague and unspecific as to the facts and locality."  (Doc. 32, p. 4).  The government responds that the indictment, combined with discovery evidence provided to the defendant, are sufficient to fully appraise the defendant of the charges pending against him and

---

[7] See Hall, 455 F.3d at 523 ("[B]ecause [the defendant] has failed to raise any contested fact issues about the alleged selective prosecution, no reasonable jurist could debate the district court's decision not to provide an evidentiary hearing to address this issue . . . ."); Webster, 162 F.2d at 334 & n.24 ("A defendant is not automatically entitled to an evidentiary hearing to make the required showing. He must first present facts 'sufficient to create a reasonable doubt about the constitutionality of [his] prosecution' resulting from selective prosecution.") (quoting United States v. Jennings, 724 F.2d 436, 445-46 (5th Cir.1984)).

to allow him to adequately prepare for trial. The Court notes initially that "[t]he purpose of a bill of particulars is to inform an accused of the charge with sufficient precision to reduce trial surprise, to enable adequate defense preparation, and critically, by the fleshing out of the charges to illuminate the dimensions of jeopardy." United States v. Davis, 582 F.2d 947, 951 (5th Cir. 1978). Determining whether to grant a bill of particulars is an inquiry which must be made considering the unique facts of each case. See id.

Under Fed. R. Crim. P. 7(f), the Court may, at its discretion, "direct the government to file a bill of particulars."[8] However, "[a] bill of particulars is not required if a defendant is otherwise provided, inter alia, with sufficient information to enable him to prepare his defense and avoid surprise." United States v. Moody, 923 F.2d 341, 351 (5th Cir. 1991). Thus, the standard for denying a defendant's request for a bill of particulars is very similar to the standard for dismissing an indictment. See id. Furthermore, when any information absent from the indictment is provided to the defendant by some other means, such as through discovery, a bill of particulars is not required. See United States v. Marrero, 904 F.2d 251, 258 (5th Cir. 1990).

The indictment in this case, which was filed by the grand jury on July 23, 2008, provides, in relevant part:

> On or about May 26, 2008, in the Western District of Louisiana, the Defendant, **Daniel Owens**, an inmate at the U.S. Penitentiary in Pollock,

---

[8] "The granting of a bill of particulars is addressed to the sound discretion of the trial court," subject to reversal on appeal only with proof that the defendant was surprised at trial, and was prejudiced in some way by the court's denial. See United States v. Mackey, 551 F.2d 967, 970 (5th Cir. 1977) (citing Wong Tai v. United States, 273 U.S. 77, 82 (1927)); accord United States v. Nixon, 816 F.2d 1022, 1031 (5th Cir. 1987).

Louisiana, possessed a prohibited object, to-wit:, two weapons made out of a metal shank and a belt with an attached padlock, in violation of Title 18, United States Code, Section 1791(a)(2).

(Doc. 1). The government points out that extensive discovery has been and will continue to be provided to the defendant in this matter, which will serve to further clarify the government's position regarding the charge contained in the indictment.[9]

As to Mr. Owens's first argument, the indictment does list the "locality" at which the incident took place, contrary to his assertions - USP Pollock. A more specific designation is not necessary to allow the defendant to adequately prepare for trial, and no "surprise" or inequity is reasonably likely to result from the lack of further specification in the indictment.[10]

Moreover, the incident which gave rise to the pending charge was not a complicated or fact-intensive one. The indictment includes the date of the incident, the charge of possession, and the types of weapons (prohibited objects) that Mr. Owens allegedly possessed. These facts are all that is required to convict under 18 U.S.C. § 1791(a)(2), and thus, all that is required in the indictment.

In all, the allegations contained in the indictment are sufficient to preclude the risk of surprise at trial, to allow Mr. Owens to prepare a defense, and to prevent any

---

[9] The Court observes that "generalized discovery is not a permissible goal of a bill of particulars." Davis, 582 F.2d at 951. Mr. Owens's motion is inappropriate to whatever extent that it may be a "fishing expedition" for such broad-based discovery.

[10] If Mr. Owens seeks further clarification of the location at which he was allegedly observed placing bloody clothes in a trash bag, or was subsequently searched, these details do not necessitate a bill of particulars. Inclusion of such details in the indictment is not required. Moreover, the government has provided the defendant with "investigative reports, Health Services Encounter reports, and other BOP documents." (Doc. 24, p. 2). Any missing facts related to the location of these events were likely included among the documents produced by the government during discovery.

11

risk of double jeopardy in a subsequent proceeding.  See Davis, 582 F.2d at 951.  The simplicity of the charge, the elements underlying the offense itself, and the circumstances giving rise to the charge alleviate the risk of prejudice to Mr. Owens. Discovery has been afforded to the defendant, and the government has ostensibly provided him with a firm basis of knowledge concerning the evidence and allegations that he will face at trial.[11]  Therefore, under the facts of this case, a bill of particulars is not required; as to this point, the defendant's motion is **DENIED**.

### F.     Motion to Review Grand Jury Concurrence Form

Finally, Mr. Owens claims that he has a "constitutional right to see the [grand jury] concurrence form, in order to ascertain that the jurors' decision to indict was unanimous." (Doc. 32, p. 4).  As an initial matter, the grand jury's decision to indict a prospective defendant need not be unanimous; rather, the concurrence of only twelve jurors is required.  Fed. R. Crim. P. 6(f).  That said, Mr. Owens's misconception of this rule does not affect his claim to a right to review the form.[12]

The Supreme Court has observed a "'long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts.'"  Dennis v. United States, 384 U.S. 855, 869 (1966) (quoting United States v. Procter & Gamble Co., 356 U.S. 677, 681 (1958)).  However, a court "may authorize disclosure . . . of a grand-jury

---

[11] The fact that extensive discovery has been provided to a defendant requesting a bill of particulars naturally weighs against the defendant's claimed need for further clarification of the charges or issues that will be presented at trial.  See United States v. Kirkham, 129 F. App'x. 61, 72 (5th Cir. 2005); Marrero, 904 F.2d at 258.

[12] Under Fed. R. Crim. P. 6(c), the grand jury foreperson or a juror selected by the foreperson must "record the number of jurors concurring in every indictment and . . . file the record with the clerk."  This record is kept sealed absent a court order.  Id.

matter . . . at the request of a defendant who shows that a ground may exist to

dismiss the indictment because of a matter that occurred before the grand jury."

Fed. R. Crim. P. 6(e)(3)(E)(ii). Thus, a party seeking disclosure of grand jury

transcripts must show a "'particularized need'" for such disclosure. Douglas Oil Co.

v. Petrol Stops Nw., 441 U.S. 211, 217 (1979). A three-part test has emerged from the

Supreme Court's jurisprudence on this issue, requiring the party seeking production

to establish: "(1) the material he seeks is needed to avoid a possible injustice in

another judicial proceeding, (2) the need for disclosure is greater than the need for

continued secrecy, and (3) his request is structured to cover only material so

needed." United States v. Miramontez, 995 F.2d 56, 59 (5th Cir. 1993) (citing Douglas

Oil, 441 U.S. at 221-222). The "particularized need" requirement has been applied by

the Fifth Circuit when a defendant requests production of a grand jury concurrence

form. See United States v. Watson, 35 F.3d 560 (5th Cir. 1994).

In this case, Mr. Owens makes no specific claim that proper grand jury

procedures were not observed, or that some other flaw in the indictment process

existed which may be uncovered by disclosure of the grand jury concurrence form.

Thus, he has made no showing that a "ground may exist to dismiss the indictment

because of a matter that occurred before the grand jury," as is required for disclosure.

Fed. R. Crim. P. 6(e)(3)(E)(ii).

Furthermore, Mr. Owens's bare assertion that he has a "constitutional right" to

view the grand jury concurrence form is unfounded and insufficient to warrant

disclosure. See Miramontez, 995 F.2d at 59 ("The mere contention that the party

seeking transcripts has a 'right' to the transcripts, without a proper showing of need, will not suffice to justify disclosure."). Rather, Mr. Owens must establish some "particularized need" to review the form which he simply has not done. See id. Where a defendant has failed to make any showing of a "particularized need," the Fifth Circuit has held that neither "production of the grand jury concurrence forms [nor] an affidavit from the court indicating that the forms were valid" is required. See Watson, 35 F.3d at 560.[13]

Therefore, the defendant's motion for production of the grand jury concurrence form is hereby **DENIED.**

## III.   Conclusion

For the foregoing reasons, each of the defendant's motions must be denied at this point. The Court reserves ruling as to any further evidentiary objections that the defendant may wish to make at trial.

SIGNED on this 17 day of October, 2009 at Alexandria, Louisiana.

DEE D. DELL
UNITED STATES DISTRICT JUDGE

---

[13] See also United States v. James, No. 05-059, 2007 WL 2323385, at *3 (E.D. La. Aug. 10, 2007) (denying a defendant's request for production of a grand jury concurrence form, because the defendant "merely asserted that he has a general 'right' to disclosure of the grand jury concurrence form without alleging that any particular irregularities occurred in his grand jury proceedings").